1 | ANDRE BIROTTE, JR.
2 | United States Attorney
  | SANDRA R. BROWN
3 | Assistant United States Attorney
  | Chief, Tax Division
4 | VALERIE MAKAREWICZ
5 | Assistant United States Attorney (Bar No. 229637)
6 | Valerie.Makarewicz@usdoj.gov
  | Room 7211 Federal Building
7 | 300 North Los Angeles Street
8 | Los Angeles, CA 90012
  | Telephone: (213) 894-2729
9 | Facsimile: (213) 894-0115
10 | ADAM D. STRAIT (Mass. BBO No. 670484)
  | Trial Attorney, Tax Division
11 | U.S. Department of Justice
12 | adam.d.strait@usdoj.gov
  | P.O. Box 683
13 | Washington, D.C. 20044
14 | Telephone: (202) 307-2135
  | Facsimile: (202) 307-0054
15 | Attorneys for the United States

16 IN THE UNITED STATES DISTRICT COURT FOR THE

17 CENTRAL DISTRICT OF CALIFORNIA

18 WESTERN DIVISION

| | |
|---|---|
| 19  UNITED STATES OF AMERICA, | Case No. 2:14-cv-5621 |
| 20          Plaintiff, | |
| 21 | UNITED STATES' COMPLAINT |
| 22          *v.* | FOR PERMANENT INJUNCTIVE RELIEF |
| 23  ELTON L. BARNES, JR., | |
| 24          Defendant. | |
| 25 | |

U.S. Compl. for Permanent Injunctive Relief
Page 1

Plaintiff, the United States of America, hereby respectfully alleges as follows:

1.    In this civil action, the United States seeks to permanently enjoin defendant Elton L. Barnes, Jr., from doing any of the following:

- preparing federal tax returns or assisting in the preparation of federal tax returns for any person other than himself;

- engaging in any action that is subject to penalty under 26 U.S.C. § 6694 or § 6695, or any criminal conduct prohibited by Title 26 of the United States Code; and

- engaging in any other fraudulent or deceptive conduct that substantially interferes with the proper administration of the federal internal revenue laws.

## Jurisdiction, Authorization, and Venue

2.    The Court has jurisdiction over this action pursuant to 26 U.S.C. §§ 7401, 7402, and 7407, and 28 U.S.C. §§ 1340 and 1345.

3.    Pursuant to 26 U.S.C. § 7401, this action is filed with the authorization of, and at the request of, the Secretary of the Treasury of the United States, acting through his delegate, the Area Counsel of the Internal Revenue Service.  The United States' Complaint is filed at the direction of the Attorney General of the United States.

4.    Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391(b).  Barnes resides in this judicial district and he has prepared federal income tax returns in this district.

**U.S. DEPARTMENT OF JUSTICE**
Tax Division, Western Region
P.O. Box 683
Washington, D.C.  20044
Telephone: 202-307-2135

## **Identification of Defendant**

5.    Defendant Elton Leander Barnes, Jr., is an individual who resides in this judicial district.  On information and belief, Barnes resides in Lawndale, California.

6.    Over at least the past ten years, and continuing to the present, Barnes has been engaged in the preparation of tax returns, including federal income tax returns, for other individuals.

7.    From time to time, Barnes has prepared tax returns under the business name McNair Group.

8.    On information and belief, from time to time, Barnes has done business under the name So Cal Financial Services.

9.    From time to time, Barnes has done business under the name Anderson Investment Group.

10.    As set forth more fully below, while preparing returns for others, Barnes has repeatedly engaged in false and fraudulent conduct, both with respect to the United States and with respect to his clients.

11.    Barnes has repeatedly engaged in conduct subject to penalty under 26 U.S.C. § 6694(a) and (b) by taking unreasonable positions on his clients' tax returns.  These unreasonable positions include the following:

- Returns that claim a business loss deduction from income, where no such business existed.

- Returns that claim a charitable donation deduction, where no such donation was made.

**U.S. DEPARTMENT OF JUSTICE**
Tax Division, Western Region
P.O. Box 683
Washington, D.C.  20044
Telephone: 202-307-2135

- Returns that claim withheld income tax, where the taxpayer was not employed by the entity that purportedly withheld the tax and no such withholding was made.

12.   Barnes has repeatedly engaged in conduct subject to penalty under 26 U.S.C. § 6695(b) by intentionally omitting to sign returns he prepared.

13.   Barnes has repeatedly engaged in conduct subject to penalty under 26 U.S.C. § 6695(f) by negotiating taxpayer refund checks and by causing taxpayer refunds to be directly deposited to bank accounts he controlled.

14.   On at least one occasion, Barnes has filed a tax return without his client's knowledge or authorization and attempted to direct the IRS to deposit the refund claimed on that return into a bank account that Barnes controlled.

## The Criminal Case

15.   On September 4, 2002, the United States filed a superseding indictment against Barnes in the case *United States v. Barnes*, 8:02-cr-189-AHS (C.D. Cal.) ("the Criminal Case").

16.   On December 16, 2002, pursuant to a plea agreement, Barnes pled guilty to one count of aiding and assisting in the preparation of false tax returns, in violation of 26 U.S.C. § 7206(2), and one count of social security fraud, in violation of 42 U.S.C. § 1383(a)(3).

17.   On or about August 29, 2003, the court entered a criminal judgment against Barnes in the Criminal Case and sentenced him to two years in prison, followed by three years of supervised release.

U.S. Compl. for Permanent Injunctive Relief
Page 4

**U.S. DEPARTMENT OF JUSTICE**
Tax Division, Western Region
P.O. Box 683
Washington, D.C.  20044
Telephone: 202-307-2135

18.     One of the terms of Barnes's supervised release was that "[a]bsent further order of Court, [Barnes] shall not prepare federal or state income tax returns for anyone but himself."

19.     In 2006, while on supervised release, Barnes prepared tax returns for other persons.

20.     On or about February 9, 2007, Barnes stipulated that he had violated the term of his supervised release requiring him to refrain from preparing tax returns for others.

21.     On April 23, 2007, the Court entered a judgment in the Criminal Case revoking Barnes's supervised release.  The sentence the Court initially imposed was vacated by the Ninth Circuit and the case remanded.  Barnes was released from custody on or about January 22, 2008, pending his resentencing.

22.     On March 17, 2008, the Court entered a judgment in the Criminal Case revoking Barnes's supervised release and sentencing him to 18 months of imprisonment, followed by one year of supervised release on the same terms and conditions as the August 2003 judgment in the Criminal Case.

23.     After serving the imprisonment portion of his sentence for revocation of his supervised release, Barnes was released from prison on or about May 26, 2009.

24.     On information and belief, Barnes prepared at least one federal income tax return for another person during the period between April 23, 2007, and May 26, 2009.

**U.S. DEPARTMENT OF JUSTICE**
Tax Division, Western Region
P.O. Box 683
Washington, D.C.  20044
Telephone: 202-307-2135

25.    On information and belief, Barnes prepared at least one federal income tax return for another person during the period between May 26, 2009, and May 25, 2010.

## **The General Course of Barnes's Conduct**

26.    Barnes used a private mailbox at 7211 Haven Ave., #E300, Rancho Cucamonga, California, for correspondence with his customers and the IRS.

27.    Under 26 U.S.C. § 6107(b), Barnes was required to maintain, for at least three years after the close of the tax period, either a copy of all of the returns he prepared or a list of all of the returns he prepared.

28.    On or about March 1, 2013, the IRS requested that Barnes provide it with copies of all of the tax returns he prepared between January 1, 2011, and December 31, 2012, or a list of the returns he prepared.

29.    Barnes did not provide the copies or the list as the IRS requested.

30.    Barnes did not appear at a scheduled interview with the IRS, provide other requested documents, or return telephone calls from the investigating Revenue Agent.

31.    The IRS has selected for examination more than 180 returns prepared by Barnes and filed after Barnes was released from prison in 2009.

32.    The IRS has rejected refund claims totaling more than $820,000 made on Barnes-prepared returns.

**U.S. DEPARTMENT OF JUSTICE**
Tax Division, Western Region
P.O. Box 683
Washington, D.C.  20044
Telephone: 202-307-2135

33.    The IRS has determined tax deficiencies totaling more than $1,160,000 based on Barnes-prepared returns.

34.    The figures in paragraphs 32 and 33 do not include refunds that the IRS paid out because Barnes-prepared returns were accepted without examination, or returns that Barnes prepared but that the IRS has been unable to identify because Barnes did not sign the returns as required.  Furthermore, the IRS has not completed its examinations of all 180-plus returns selected for audit, so the figures in paragraphs 32 and 33 may increase as the examinations are finished.

35.    In addition to money the United States has lost due to understated tax liabilities and overstated refunds, the United States has had to spend limited enforcement resources to identify returns that Barnes prepared and to examine them.

36.    On at least 50 separate occasions, Barnes has caused federal or state tax refunds for someone other than himself to be deposited into a bank account he controls.

### Specific Instances of Barnes's Conduct

37.     In the paragraphs below, the United States sets out allegations concerning five particular customers of Barnes's.  In this Complaint, the United States uses only the customers' first names.

#### 1. Dawn and Shane

38.    Dawn and Shane are a married couple.  They live in Riverside County, California.

39.    Dawn and Shane were referred to Barnes through a colleague of Shane's.

U.S. Compl. for Permanent Injunctive Relief
Page 7

**U.S. DEPARTMENT OF JUSTICE**
Tax Division, Western Region
P.O. Box 683
Washington, D.C.  20044
Telephone: 202-307-2135

40. Barnes prepared amended federal income tax returns for 2009, 2010, and 2011 for Dawn and Shane.

41. Barnes met with Dawn and Shane at their home. Barnes told Dawn and Shane that their tax returns were previously done incorrectly, and took their receipts. In stating his qualifications to the Sullivans, Barnes falsely claimed to have previously worked for the Internal Revenue Service. Barnes charged the Sullivans a fee plus a percentage of their refund for preparing the amended returns.

42. After the IRS opened an examination of the Sullivans' 2010 and 2011 income tax returns, Barnes began avoiding their telephone calls.

***2010 Amended Return***

43. The 2010 amended return claimed a refund of $19,072.

44. Barnes signed the 2010 amended return as its preparer.

45. The 2010 amended return listed Shane as single, even though he and Dawn were married.

46. On the 2010 amended return, Barnes stated that Dawn and Shane had made $17,486 in charitable donations.

47. On information and belief, Dawn and Shane made materially less than $17,486 in charitable donations during 2010.

48. On the 2010 amended return, Barnes stated that Dawn and Shane were entitled to a "repayment" deduction of $9,886.

49. On information and belief, Dawn and Shane were not entitled to claim the "repayment" deduction.

50. On the 2010 amended return, Barnes stated that Shane had a sole proprietorship electrician business. Barnes claimed that the

**U.S. DEPARTMENT OF JUSTICE**
Tax Division, Western Region
P.O. Box 683
Washington, D.C.  20044
Telephone: 202-307-2135

business had $2,437 in income and $50,392 in expenses, for a loss of $47,955.  The loss was claimed as a deduction against Shane's income.

51.    On information and belief, Shane did not have a sole proprietorship electrician business in 2010.

52.    Barnes knew that the positions he was taking on Dawn and Shane's amended 2010 return were false.  In the alternative, Barnes failed to take reasonable steps to investigate the truth of the positions he was taking on Dawn and Shane's amended 2010 return.

***2011 Amended Return***

53.    The 2011 amended return claimed a refund of $28,017.

54.    Barnes signed the 2011 amended return as its preparer.

55.    On the 2011 amended return, Barnes stated that Dawn and Shane had made $18,148 in charitable donations.

56.    On information and belief, Dawn and Shane made materially less than $18,148 in charitable donations during 2010.

57.    On the 2010 amended return, Barnes stated that Dawn and Shane were entitled to a "repayment" deduction of $5,879.

58.    On information and belief, Dawn and Shane were not entitled to claim the "repayment" deduction.

59.    On the 2011 amended return, Barnes stated that Shane had a sole proprietorship electrician business.  Barnes claimed that the business had $5,577 in income and $54,097 in expenses, for a loss of $48,470.  The loss was claimed as a deduction against Dawn and Shane's income.

**U.S. DEPARTMENT OF JUSTICE**
Tax Division, Western Region
P.O. Box 683
Washington, D.C.  20044
Telephone: 202-307-2135

60.    On information and belief, Shane did not have a sole proprietorship electrician business in 2011.

61.    Barnes knew that the positions he was taking on Dawn and Shane's amended 2011 return were false.  In the alternative, Barnes failed to take reasonable steps to investigate the truth of the positions he was taking on Dawn and Shane's amended 2011 return.

## 2. **Robin and Dawn**

62.    Robin and Dawn are a married couple.  They live in Orange County, California.

63.    Robin and Dawn were referred to Barnes by a family member.

64.    Barnes prepared amended federal income tax returns for 2009, 2010, and 2011 for Robin and Dawn.

65.    Before preparing the amended returns, Barnes met with Robin and Dawn at Robin and Dawn's house.  He told them that their amended returns would be correctly prepared in order to maximize their refund.  During the meeting, Barnes did not review any documents other than Robin and Dawn's original returns.  Dawn asked Barnes if he needed receipts; Barnes said no.  Barnes did not ask Robin and questions regarding non-employee compensation.

66.    On or about June 5, 2012, Barnes signed Robin and Dawn's amended returns as the preparer.  He listed "McNair Group" as the name of his firm.

***2009 Return***

67.    The amended 2009 return claimed a refund of $13,845.

U.S. Compl. for Permanent Injunctive Relief
Page 10

68.    On the amended 2009 return, Barnes stated that Robin had a sole proprietorship business as a "time keeper."  Barnes stated that Robin's sole proprietorship business had $2,174 in income and $35,063 in expenses, for a loss of $32,889.  The loss was claimed as a deduction from Robin and Dawn's income.

69.    In fact, Robin did not have a sole proprietorship business in 2009.

70.    On the amended 2009 return, Barnes stated that Robin and Dawn had made $18,653 in charitable donations.

71.    On information and belief, Robin and Dawn donated materially less than $18,653 in cash and property to charitable organizations during 2009.

72.    Barnes knew that the positions he was taking on Robin and Dawn's amended 2009 return were false.  In the alternative, Barnes failed to take reasonable steps to investigate the truth of the positions he was taking on Robin and Dawn's amended 2009 return.

### 2010 Return

73.    The amended 2010 return claimed a refund of $10,035.

74.    On the amended 2010 return, Barnes stated that Robin had a sole proprietorship business as a "time keeper."  Barnes stated that Robin's sole proprietorship business had $2,110 in income and $33,620 in expenses, for a loss of $31,510.  The loss was claimed as a deduction from Robin and Dawn's income.

75.    On the amended 2010 return, Barnes claimed a deduction of $11,924 in charitable donations.

U.S. Compl. for Permanent Injunctive Relief
Page 11

76.   On information and belief, Robin and Dawn donated materially less than $11,924 in cash and property to charitable organizations during 2010.

77.   Barnes knew that the positions he was taking on Robin and Dawn's amended 2010 return were false.  In the alternative, Barnes failed to take reasonable steps to investigate the truth of the positions he was taking on Robin and Dawn's amended 2010 return.

**3. Sam**

78.   Sam lives in Los Angeles County, California.

79.   On or about February 19, 2013, a federal income tax return for 2012 was electronically submitted for Sam.  The return claimed a refund of $7,642.

80.   On information and belief, Barnes prepared and submitted the return.

81.   The return claimed a deduction of $13,167 for charitable donations during 2012.

82.   On information and belief, Sam did not make $13,167 in charitable donations during 2012.

83.   The return claimed that Sam had a sole proprietorship business as a "journeymen [sic] linemen," and that the business had gross receipts of $3,455 and expenses of $38,537.  The return claimed a net loss as a deduction against income of $35,082.

84.   On information and belief, Sam did not have a sole proprietorship business in 2012.

**U.S. DEPARTMENT OF JUSTICE**
Tax Division, Western Region
P.O. Box 683
Washington, D.C.  20044
Telephone: 202-307-2135

85.    The return claimed that $25,917 in federal income tax had been withheld from Sam's paychecks during 2012.

86.    In fact, only $5,917 in federal income tax had been withheld.

87.    On February 27, 2013, the IRS deposited the requested $7,642 refund into a checking account at Wells Fargo Bank with an account number ending in the digits 50 ("the '50 account").  The '50 account is held in Barnes's name.

88.    On information and belief, Barnes knew that the positions he was taking on the return were false.  In the alternative, Barnes failed to take reasonable steps to investigate the truth of the positions he was taking the return.

89.    On information and belief, Barnes deliberately made the false statements in order to defraud the United States.

   **4. Bruce**

90.    Bruce is a retiree and military veteran.  He lives in Riverside County, California.  Since 2003, Bruce's only income has been social security and veteran's benefits.

91.    In 2008, Bruce met Barnes at a store.  Barnes was soliciting business for a newly-formed tax preparation business.  Bruce approached Barnes to ask a question about a possible deduction.

92.    The following week, Barnes visited Bruce at Bruce's residence. Bruce gave Barnes information regarding the deduction about which he had a question.  Bruce also gave Barnes other personal identification information.  Barnes told Bruce that he would review the documents

U.S. Compl. for Permanent Injunctive Relief
Page 13

and contact him soon.  Bruce never heard from Barnes again and was unable to contact him.

93.    On or about October 14, 2009, a 2008 federal individual income tax return for Bruce was filed electronically.

94.    On information and belief, the return was filed by Barnes.

95.    The return was filed without Bruce's knowledge or approval.

96.    The 2008 return for Bruce included a W-2 showing that Bruce worked for Los Angeles County in 2008, earned more than $70,000.00 in wages, and had more than $24,000.00 in federal income tax withheld.

97.    The 2008 return for Bruce also included claimed deductions for unreimbursed employee business expenses.

98.    Bruce was not employed in 2008.  The W-2 was fraudulent. The unreimbursed employee business expenses were false.

99.    The 2008 return for Bruce claimed a refund of more than $21,000.

100.   The 2008 return for Bruce instructed the IRS to make a direct deposit of the refund to a checking account at Wachovia Bank with an account number ending with the digits '04 ("the '04 account").

101.   In October 2009, the '04 account was jointly held by Barnes and his ex-wife, Patricia Cullors.

102.   The IRS did not allow the refund claimed on the 2008 return submitted for Bruce.

103.   On information and belief, Barnes knew that he was falsely and fraudulently claiming a refund in Bruce's name.

U.S. Compl. for Permanent Injunctive Relief
Page 14

5. **Jason**

104.   Jason lives in Riverside County, California.

105.   No federal income tax return has been filed for Jason for 2008 or earlier years, or for 2011 or later years.

106.   On information and belief, Barnes prepared and filed 2009 and 2010 federal income tax returns in Jason's name.

***2009 Return***

107.   On or about September 21, 2010, a federal income tax return was electronically submitted for Jason.  The return requested a refund of $8,909.

108.   Although the return was submitted in Jason's name and with Jason's social security number, the address listed on the return was Barnes's residential address.

109.   The return included a Form W-2 that claimed that Jason was an employee of "Maximum Financial Services."  The address given for Maximum Financial Services on the W-2 was an address Barnes used for mail to So Cal Financial Services.  The address given for Jason on the W-2 was Barnes's residential address.

110.   The W-2 stated that Jason earned $48,779 in wages, of which $14,553 was withheld for federal income tax.

111.   On information and belief, "Maximum Financial Services" did not exist.  In the alternative, it did not employ Jason.

112.   On information and belief, Barnes deliberately and fraudulently created the W-2 in order to induce the IRS to issue a refund.

U.S. Compl. for Permanent Injunctive Relief
Page 15

113.  The return requested that the refund be deposited to an account with Santa Barbara Bank & Trust, N.A., now part of Union Bank.  The deposit was made to Santa Barbara Bank & Trust as part of a refund anticipation loan.

114.  The IRS issued the requested refund of $8,909 on October 25, 2010.

***2010 Return***

115.  On or about February 21, 2011, a federal income tax return was electronically submitted for Jason.  The return requested a refund of $4,151.

116.  Although the return was submitted in Jason's name and with Jason's social security number, the address listed on the return was Barnes's private mailbox mailing address.

117.  The return included a Form W-2 that claimed that Jason was an employee of "Riverside School District."  The address given for Jason on the W-2 was Barnes's private mailbox mailing address.

118.  The W-2 stated that Jason earned $36,775 in wages, of which $7,446 was withheld for federal income tax.

119.  On information and belief, the Riverside School District did not employ Jason.

120.  On information and belief, Barnes deliberately and fraudulently created the W-2 in order to induce the IRS to issue a refund.

**U.S. DEPARTMENT OF JUSTICE**
Tax Division, Western Region
P.O. Box 683
Washington, D.C.  20044
Telephone: 202-307-2135

121.   The return requested that the refund be deposited to an account with University National Bank.  The deposit was made to University National bank as part of a refund anticipation loan.

122.   The IRS issued the requested refund of $4,151 on February 21, 2011.

## Barnes's Recent Conduct

123.   Barnes continues to prepare federal income tax returns.

124.   Barnes continues not to observe the requirements for federal income tax return preparation, as shown by his failure to abide by the rules prohibiting return preparers from negotiating refund checks or depositing refund checks into their own accounts.

125.   On or about September 5, 2013, a federal income tax refund for a person whose first name is Hokok was electronically deposited in an account held in Barnes's name.

126.   On or about October 23, 2013, a federal income tax refund for a person whose first name is Peter was electronically deposited in an account at Wells Fargo Bank held in the name of Anderson Investment Group.  The account number ends with the digits '86 ("the '86 account").

127.   Barnes has signature authority over the '86 account.

128.   On information and belief, in October 2013, Barnes paid personal expenses from the '86 account.

129.   On information and belief, on or about October 29, 2013, Barnes negotiated a federal income tax refund check made out to a person whose first name is Lonnie.

U.S. DEPARTMENT OF JUSTICE
Tax Division, Western Region
P.O. Box 683
Washington, D.C.  20044
Telephone: 202-307-2135

130.  On or about February 20, 2014, a federal income tax refund for a person whose first name is Isaiah was electronically deposited in the '86 account.

131.  On or about March 26, 2014, a federal income tax refund for a person whose first name is Robert was electronically deposited in the '86 account.

## Count I: Permanent Injunctive Relief
## under 26 U.S.C. §§ 7402 and 7407

132.  The United States incorporates by reference the allegations in paragraphs 1 through 131.

133.  As set forth more fully above, Barnes has engaged in "fraudulent or deceptive conduct which substantially interferes with the proper administration of the Internal Revenue laws" by taking positions that Barnes knows are contrary to the facts.

134.  As set forth more fully above, Barnes has engaged in conduct that is "subject to penalty under [26 U.S.C.] section 6694" by preparing returns and claims for refund based on positions for which there is no substantial authority.

135.  As set forth more fully above, Barnes has engaged in conduct that is "subject to penalty under [26 U.S.C.] section 6695" by failing to sign returns that he prepared.

136.  As set forth more fully above, Barnes has engaged in conduct that is "subject to penalty under [26 U.S.C.] section 6694" by negotiating refund checks made out to others.

**U.S. DEPARTMENT OF JUSTICE**
Tax Division, Western Region
P.O. Box 683
Washington, D.C.  20044
Telephone: 202-307-2135

137.  As set forth more fully above, Barnes has engaged in conduct that interferes with the enforcement of the internal revenue laws.

138.  Barnes is likely to continue to engage in the conduct unless he is permanently enjoined.

139.  Unless Barnes is permanently enjoined from preparing tax returns, the IRS will have to devote substantial time and resources to examining tax returns Barnes prepared.

140.  Unless Barnes is permanently enjoined from preparing tax returns, those relying on his services may be subjected to tax deficiencies, penalties, and interest as a result of Barnes's failure to prepare accurate returns.

141.  The United States is entitled to a permanent injunction against Barnes under 26 U.S.C. § 7407.

142.  The United States is entitled to a permanent injunction against Barnes under 26 U.S.C. § 7402.

**For the foregoing reasons, the United States respectfully requests the following relief:**

A. That the Court find that Elton L. Barnes, Jr., individually and doing business under the names McNair Group, So Cal Financial Services, and Anderson Investment Group, has repeatedly and continually engaged in conduct subject to penalty under 26 U.S.C. §§ 6694 and 6695.

B. That the Court find that Elton L. Barnes has engaged in fraudulent and deceptive conduct that substantially interferes

**U.S. DEPARTMENT OF JUSTICE**
Tax Division, Western Region
P.O. Box 683
Washington, D.C.  20044
Telephone: 202-307-2135

with the proper administration of the internal revenue laws and that interferes with the enforcement of the internal revenue laws.

C. That the Court find that injunctive relief against Barnes is necessary and appropriate in order to prevent the recurrence of Barnes's conduct.

D. That the Court enter a permanent injunction against Barnes, both individually and doing business under any other name, and any person in active concert or participation with him, from preparing federal tax returns or assisting in the preparation of federal tax returns for any person other than himself, engaging in any action that is subject to penalty under 26 U.S.C. § 6694 or § 6695, or any criminal conduct prohibited by Title 26 of the United States Code; and engaging in any other fraudulent or deceptive conduct that substantially interferes with the proper administration of the federal internal revenue laws.

E. That the Court order Barnes to cooperate with the United States to identify all federal income tax returns he has prepared in the last three years.

F. That the Court retain jurisdiction to enforce this injunction and that the United States shall be permitted to engage in post-judgment discovery in accordance with the Federal Rules of Civil Procedure to ensure compliance with the permanent injunction.

G. That the United States shall be granted its costs.

\\

**U.S. DEPARTMENT OF JUSTICE**
Tax Division, Western Region
P.O. Box 683
Washington, D.C.  20044
Telephone: 202-307-2135

1    H. That the Court grant the United States any other and further

2       relief as may be appropriate under the circumstances.

6 Respectfully submitted this 21st day of July, 2014.

ANDRE BIROTTE, JR.
United States Attorney
SANDRA R. BROWN
Assistant United States Attorney
Chief, Tax Division

 /s/ Adam Strait
ADAM D. STRAIT
Trial Attorney, Tax Division
U.S. Department of Justice

U.S. DEPARTMENT OF JUSTICE
Tax Division, Western Region
P.O. Box 683
Washington, D.C.  20044
Telephone: 202-307-2135